IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

<table>
<tr><td>VICTORIA ANDERSON,<br>Plaintiff,</td><td>*<br>*<br>*<br>*</td><td></td></tr>
<tr><td>v.</td><td>*<br>*<br>*</td><td>Civil Action No. 08-cv-02424-AW</td></tr>
<tr><td>DISCOVERY COMMUNICATIONS, LLC<br><em>et al.</em>,<br>Defendants.</td><td>*<br>*<br>*<br>*</td><td></td></tr>
</table>

**********************************************************************

## <u>Memorandum Opinion</u>

Plaintiff Victoria Anderson ("Anderson") brings this action against Defendants Discovery Communications, LLC ("Discovery"), Janell Coles ("Coles"), Lisa Williams-Fauntroy ("Williams-Fauntroy"), and Doe Defendants 1 through 4 ("Doe Defendants"), alleging: (1) unlawful termination and retaliation on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Montgomery County Human Rights Act, Montgomery Cty. Code § 27-1 *et seq.*; and (2) deprivation and interference of rights and unlawful retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").[1] *See* Doc. No. 27. Currently pending before the Court are Anderson's motion for discovery sanctions, *see* Doc. Nos. 78, 81, and Defendants' motion for summary judgment, *see* Doc. No. 86. The Court has reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See* Md. Loc. R. 105(6) (D. Md. 2010). For the reasons that follow, the Court DENIES Anderson's motion for discovery sanctions and GRANTS Defendants' motion for summary judgment.

---

[1] Plaintiff has voluntarily dismissed Count I for tortious interference with a prospective economic advantage, Count VI for violations of ERISA § 510, and Count VIII under the Maryland Wage Payment and Collection Law. *See* Doc. No. 105.

## I.      FACTUAL & PROCEDURAL BACKGROUND

### A.      Anderson's Employment with Discovery

The following facts are uncontroverted or presented in a light most favorable to Plaintiff

Anderson. Anderson was employed by Discovery as a full-time employee from August 30, 2004

until January 3, 2007, when she was terminated. During her employment, Anderson worked as

an attorney in the Programming, Production, and Talent ("PPT") group of Discovery's Legal

Department. *See* Doc. No. 100 at 5. Anderson reported to Janell Coles ("Coles"), who was at that

time Director of the PPT group. Doc. No. 91 Ex. A at 89-90. Coles in turn reported to Lisa

Williams-Fauntroy ("Williams-Fauntroy"), who was at that time the Vice President of the PPT

group. *Id.* As a PPT attorney for Discovery, Anderson's work consisted of negotiating and

drafting agreements for television programs, providing ongoing legal advice to clients, and

providing legal support for the Discovery Health Channel and Discovery's Asia networks. Doc.

No. 100 Ex. 3 at 1-2.

Regarding Anderson's work performance, Anderson never received a "fully meets" all

expectations on any of her formal performance reviews, but she was recognized as having strong

technical, legal, and drafting skills. *See* Doc. No. 91 Exs. A:19-A:22.[2] Anderson's mid-year 2005

review rated her as "needs improvement" in the areas of "Respect," "convey[ing] thoughts

clearly, concisely, and respectfully," and "effectively organizing, planning, and prioritizing

work." Doc. No. 91 Ex. A at 20. The review explained that Plaintiff's tone was seen as

"combative" and that clients felt "badgered" by her and "perceive[d] her as difficult to work

---

[2]Defendants' attachments to its motion for summary judgment contain exhibits within exhibits. For example,  the documents referred to here are Exhibits 19-22 of Exhibit A.

with" and a "roadblock to deals getting done." *Id.* Her mid-year 2006 review rated her as "below expectations" in categories including: "effectively communicates expectations," "takes into account all points of view prior to recommending a solution," and "resolves conflicts in a direct, non-combative manner." *Id.* at 22. Anderson was also rated as "needs improvement" in the categories of "Respect" and "Productive relationships." *Id.* The review specifically notes that "in certain contexts [Anderson's] methods appear well-reasoned and pragmatic, and in others seem inflexible and self-serving." *Id.* However, Anderson contends that despite any issues that may have existed in the past, by 2006 any demeanor or tone issues had long been worked through. For example, in Anderson's 2006 mid-year review, her supervisor describes her tone as "always cordial." Doc. No. 100 Ex. 34. Several months later in Anderson's 2006 annual performance review, her supervisor cautions her that Anderson "can not operate from the basis that as people get to know her they will know that she is a nice and accommodating person." Doc. No. 100 Ex. 35.

      B.    <u>Anderson's Sleep Disorder Diagnosis</u>

In October 2006, while in California for an ABA Conference, Anderson visited the doctor complaining of flu-like symptoms, a severe earache and difficulty falling asleep. Doc. No. 100 Ex. 3 at 9. Anderson's doctor, Dr. Bailey-Walton, advised her that Anderson may be suffering from a mental impairment affecting her sleep. *Id.* Due to her sleeping problems, Anderson took four sick days the week of October 15 and remained in California that week. *Id.* Following her appointment with Dr. Bailey-Walton, Anderson requested and was provided with FMLA leave for the period of October 20, 2006 through November 15, 2006. *Id.* at 10-11. Anderson saw Dr. Cullen for her sleeping issues on October 27, 2006. Doc. No. 91 Ex. D at 20.

3

Dr. Cullen's examination revealed that all of Plaintiff's laboratory test results were normal but

that she was suffering from "fatigue" or "sleep deprivation." Doc No. 91 Ex. D:25-26, D:4. Dr.

Cullen wrote on a prescription pad: "Return to full duty with hour restriction to 8 hours per day."

*Id.* On November 14, 2006, Anderson saw Doctor Andrew Tucker, who ultimately diagnosed

Plaintiff with insomnia, "both difficulty falling asleep and staying asleep." Doc. No. 91 Ex. E at

29.

Upon preparing to return to work in November 2006, Anderson requested that she be

limited to a standard eight-hour work day. Doc. No. 100 Ex. 3 at 11-12. Discovery generally

expects its employees to work at minimum 40 hours per week, and generally to be in the office

during Discovery's core business hours of 9 a.m. to 6 p.m. Monday through Friday. Plaintiff

acknowledges that it would be impossible for her to estimate how many hours she normally

worked at Discovery because workload fluctuations depended on the department's needs. Doc.

No. 91 Ex. A at 98-99, 115, 136. Upon receiving Anderson's request to limit her hours and the

note from Dr. Cullen to that effect, Anderson's supervisors asked Anderson to submit a work

plan in which she would propose how she planned to perform the necessary functions of her job

with this restriction. Doc. No. 100 Ex. 3 at 12. Anderson submitted a plan in which she indicated

that she could commit to being in the office between 11 a.m. and 4 p.m. Doc. No. 91 Ex. C:1.

Anderson stated that she would not keep track of her time spent at lunch, on breaks, or attending

to personal matters during the day, and would not keep track of her work hours on individual

projects, unless other members of the PPT group were also required to do so. *Id.* Defendants

considered and ultimately denied Anderson's request to work a reduced number of hours, finding

that the restriction would have the effect of preventing Anderson from performing the essential

functions of her position and would make it difficult-to-impossible for PPT to provide

satisfactory service to its clients. Doc. No. 91 Ex. H at 73-74.


C.      Anderson's Termination of Employment

In December 2006, Defendants made the decision to terminate Anderson's employment.

Doc. No. 91 Ex. B at 94.  Williams-Fauntroy, Anderson's second-level supervisor,[3] contends that

this decision was based on Plaintiff's "pattern of untrustworthiness," including that she

"miscalculated and did not truthfully report her time entries and vacation"; that she had a

"propensity to manipulate conversations and correspondence and discussions," such as by

"misconstruing email" and "never answering a question head on"; that she was insubordinate and

unable to follow directions, including her "[f]ailure to do her review [*i.e.*, her 2006 year-end self-

assessment] on time"; her "[g]oing above" Coles, her supervisor, when she did not agree with

Coles' decisions, and her overall "combative" and "difficult" demeanor that lead to an "inability

to establish a trust among her clients and managers." Doc. No. 91 Ex. H at 5, 6, 9, 48-57.

Anderson contends that Defendants' reasons for terminating her have shifted because Defendants

initially stated that Anderson was discharged for the sole reason that she allegedly falsified

absence records;[4] records which Anderson contends Defendants in fact falsified or otherwise

wrongfully tampered with. *See* Doc. No. 100 at 35.

On September 16, 2008, Anderson filed suit in this Court alleging eight causes of action

against Defendants. *See* Doc. No. 1. Most of those counts were dismissed by the Court in its

---

[3]Anderson's immediate supervisor was Coles, and Coles' supervisor was Williams-Fauntroy.
[4]However, Anderson testified during her deposition that Williams-Fauntroy had  listed untrustworthiness as one of
the reasons for Anderson's discharge during her January 3rd  telephone conversation with Anderson. Doc. No. 106
Ex. A at 330.

August 28, 2009 Order. *See* Doc. No. 26. Anderson subsequently filed an amended complaint,

*see* Doc. No. 27, and later voluntarily dismissed several of the claims therein, *see* Doc. No. 105.

The claims remaining in this case are: retaliation and failure to accommodate claims under the

ADA (Count II),[5] and the Montgomery County Human Rights Act (Count III), discrimination

and interference in violation of the FMLA (Count IV) and retaliation in violation of the FMLA

(Count V). *See* Doc. No. 27. Now pending before the Court are Plaintiff's motion for discovery

sanctions and Defendants' motion for summary judgment in their favor on all remaining claims

asserted by Anderson.


## II.   STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex

Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in

favor of the nonmoving party, including questions of credibility and of the weight to be accorded

to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with

affidavits or other similar evidence to show that a genuine issue of material fact exists. *See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact

---

[5]The Court notes that during the August 26, 2009 oral argument on Defendants' motion to dismiss, Anderson's counsel represented that Plaintiff was not asserting a failure to accommodate claim under the ADA or MCHRA. *See* Aug. 26, 2009 Court Tr. 12. However, Anderson clearly states a claim for failure to accommodate in her response brief. Doc. No. 100 at 42. Thus, the Court will frame Anderson's claim as such.

presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for

the non-moving party." *Anderson,* 477 U.S. at 248. Although the Court should believe the

evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party

cannot create a genuine dispute of material fact "through mere speculation or the building of one

inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).


III.    **ANALYSIS**

A.      <u>Anderson's Motion for Discovery Sanctions</u>

Currently pending is Anderson's motion for discovery sanctions under Fed. R. Civ. P.

37(d). *See* Doc. No. 78. Anderson contends that Williams-Fauntroy was deposed pursuant to

Fed. R. Civ. P. 30(b)(6), and that Williams-Fauntroy "was unable to provide [Anderson with]

appropriate testimony responsive to the areas of inquiry about which she was designated to

testify." *Id.* at 1. Anderson contends that Williams-Fauntroy was "unable to answer almost

anything with any certainty" regarding Plaintiff's termination from employment. *Id.* at 5. In

granting Anderson's motion for sanctions, Anderson requests that the Court estop Defendants

from introducing any evidence or argument that contradicts, supplements, or is otherwise

inconsistent with the testimony provided by Williams-Fauntroy's deposition. Doc. No. 78 Ex. 1.

Anderson's counsel did not formerly confer with Defendant Discovery's counsel before moving

for sanctions, although Anderson's counsel did note during the deposition that "[i]f you can't

answer that question after reviewing documents and talking to counsel and whatever, you come

here unprepared, then I'm going to pursue that." Doc. No. 81 at 4.

Pursuant to Rule 30(b)(6), when a party seeks discovery from an organization but does

not know the identity of individuals with relevant knowledge, the party may name the

organization as the deponent, requiring it to designate persons to testify in response. Fed. R. Civ. P. 30(b)(6). The deponent organization is "obligated to produce one or more 30(b)(6) witnesses who [are] thoroughly educated about the noticed deposition topics with respect to any and all facts known to [the deponent organization] or its counsel." *Int'l Ass'n of Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 487 (D. Md. 2005) (quoting *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D.D.C. 2003)). Rule 37(d) sanctions are appropriate for "failure to appear by any means of wholly failing to educate a Rule 30(b)(6) witness, unless the conduct was substantially justified." *Werner-Masuda*, 390 F. Supp. 2d at 489.

Anderson claims that Williams-Fauntroy's testimony was so unhelpful and so unresponsive to the areas of inquiry that the deponent effectively "fail[ed] to appear" for her deposition. *See* Doc. No. 78 at 7. Defendants' respond by citing extensively to Williams-Fauntroy's deposition and contending that the deponent provided comprehensive and exhaustive testimony on 18 discrete topics. Although at times the deponent was unable to provide dates and stated that she could not remember all of the reasons for Anderson's termination, the Court notes that this is not a situation in which the deponent claimed to have no knowledge at all about any topic. Rule 30(b)(6) is meant to apply where the deponent claims to have such a lack of knowledge about relevant facts that it gives rise to the suggestion that the entity had designated the deponent to "bandy" and obstruct discovery. *See Banks v. Office of the Sergeant-at-Arms*, 241 F.R.D. 370, 372-73 (D.D.C. 2007). In the deposition at issue, the Court does not find that Williams-Fauntroy's responses to any of the topics upon which she was questioned were so unresponsive and inadequate as to render discovery sanctions proper.

Moreover, Anderson failed to meet and confer with Defendants before moving for sanctions, as required by Local Rule 104.7. Rule 104.7 provides that:

8

> The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court.

Md. Local Rule 104.7. Anderson argues that Rule 104.7 does not apply in this case because Anderson is not requesting relief in the form of supplementation or an additional deposition, but rather is requesting that this Court enter an Order binding Defendant Discovery to the responses provided in the Rule 30(b)(6) deposition and prohibiting Discovery from attempting to modify the responses given at the Rule 30(b)(6) deposition.

Anderson ultimately did provide a Rule 104.7 certificate, but only after filing a motion for sanctions. *See* Doc. No. 81 at 6. In the certification, Anderson's counsel states that he conferred with Defendants' counsel during the actual deposition, regarding the Rule 30(b)(6) witness' preparation. *Id.* However, this is insufficient to satisfy the "meet and confer" requirement of Rule 104.7, which is designed to limit the involvement of the Court in Parties' discovery disputes. *See Kemp v. Harris*, 263 F.R.D. 293, 297 (D. Md. 2009) (sending one e-mail to opposing counsel is insufficient to constitute a good faith effort to confer under Rule 104.7). Accordingly, Anderson's motion for discovery sanctions is denied.

Anderson also asserts claims under the ADA and the Montgomery County Human Rights Act ("MCHRA") based on retaliation and failure to accommodate, and under the FLMA for interference with Anderson's leave in December 2006, and retaliation for requesting the reduced work schedule leave. After reviewing the record, the Court does not believe Anderson's claims can survive summary judgment. The record shows that Anderson's poor communication skills with her superiors, rather than a discriminatory or retaliatory intent, led to Anderson's removal from her position at Discovery.

9

B.    Discrimination on the Basis of Disability

The Court first addresses Anderson's claim that her rights under the ADA and the MCHRA were violated when Defendants failed to accommodate her disability and removed her from her position at Discovery because of her disability. As a general matter, Maryland courts rely on ADA case law for guidance when interpreting the MCHRA. *See, e.g.*, *Ridgely v. Montgomery Cnty.*, 883 A.2d 182, 193 (2005). Here, Anderson's ADA claims parallel her claims under the MCHRA, and Anderson addresses her federal and state claims in the same section, citing to federal law exclusively. *See* Doc. No. 100 at 42-49. Accordingly, the Court will consider Anderson's ADA and MCHRA claims together.

Anderson, who was diagnosed with a sleep disorder, argues that Defendants failed to accommodate Anderson's requests for reasonable accommodations and terminated her because of her disability. In a failure to accommodate case, the plaintiff must show "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir.2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999)).

In the case at bar, the primary issue is whether Anderson is in fact an individual with a disability within the meaning of the statute. The Americans with Disabilities Act of 1990,[6] 104

---

[6]The ADA was amended effective January 1, 2009, after this suit was filed. *See* ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553. Congress did not expressly intend for these changes to apply retroactively, and the thus Court must apply pre-ADAAA case law here. *See Shin v. Univ. of Md. Sys. Corp.*, 369 F. App'x. 472, 479 (4th Cir. 2010).

Stat. 328, 42 U.S.C. § 12101 *et seq.*, prohibits discrimination by covered entities, including

private employers, against qualified individuals with a disability. Under the Act, "disability" is

defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life
> activities of such individual;
>> (B) a record of such impairment; or
>> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). To make out a claim for disability employment discrimination, the first

question is whether the plaintiff is disabled and is an "otherwise qualified individual." *Rhoads v.

F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001). The ADA defines a "qualified individual with a

disability" as "an individual with a disability who, with or without reasonable accommodation,

can perform the essential functions of the employment position that such individual holds or

desires." 42 U.S.C. § 12111(8). In order to survive summary judgment, Anderson is required to

produce evidence showing that she is both qualified and disabled.

   If the plaintiff establishes a *prima facie* case, the defendant must present a legitimate,

nondiscriminatory reason for the challenged conduct. *See Reeves v. Sanderson Plumbing Prod.,

Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253

(1981)). If the defendant succeeds in doing so, that will rebut the presumption of discrimination

raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206

F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff must then

"prove by a preponderance of the evidence that the legitimate reasons offered by the defendant

were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the

end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally

discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Defendants argue that Anderson cannot establish a *prima facie* case because Anderson's sleep disorder does not qualify her as disabled under the ADA. Moreover, Defendants argue that Anderson cannot establish a record of any such disability or that she was regarded as having any such disability. Defendants contend that even if Anderson established a *prima facie* case, Defendants have established legitimate, nondiscriminatory reasons for removing Anderson: her history of untrustworthy, insubordinate, and manipulative behavior, which Defendants documented long before Anderson's alleged disability arose. Defendants assert that Anderson has not offered any evidence to show that Defendants reasons for terminating Anderson were pretext for a discriminatory purpose.

1. Anderson is not an Individual with a Disability under the ADA

Anderson contends that she should be considered an individual with a disability under the ADA because her sleep disorder is a mental disorder that qualifies as an impairment under 29 C.F.R. § 1630.2(h)(2). Although the text of the ADA does not define "impairment," the EEOC regulations issued to implement Title I of the ADA state that a physical or mental impairment is:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
>
> (2) Any mental or physical disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h). Defendants counter that Anderson has failed to present sufficient evidence in the record to establish an issue of fact that her sleep disability was so severe as to substantially limit her major life activity of sleep, or any life activity.

Anderson contends that other courts have found that sleep apnea can be a "physical impairment" under the ADA. Specifically, Anderson cites to *Kolecyck-Yap v. MCI Worldcom, Inc.*, in which the court noted that "[s]leep apnea does qualify as a physical impairment to the extent it affects the neurological, respiratory, and cardiovascular systems." No. 99-cv-8414, 2001 WL 245531, at *9 (N.D. Ill. March 12, 2001). However, in that case the court granted summary judgment on the plaintiff's ADA claims based on the plaintiff's failure to present sufficient evidence that her sleep apnea affected her major life activity of sleep. *See id.*

Similarly, Anderson has failed to adduce evidence of the severity of her impairments due to her sleep disorder, which her doctor specifically noted was not sleep apnea. Doc. No. 106, Ex. C at 45. Anderson's doctor was of the opinion that despite Anderson's insomnia, Anderson functioned normally, and, as of December 19, 2006, she was not disabled from a sleep standpoint. *See* Doc. No. 91 Ex. E at 29-30. Moreover, Anderson told her doctor that despite sleeping only a few hours a night, she would awake feeling "fully refreshed." Doc. No. 91 Ex. E at 15. Indeed, Anderson does not contend that her daytime functioning was significantly impaired by her sleep disorder; she argues only that her major life activity of sleep was impaired. Dr. Cullen could not find a physiologic cause for Anderson's sleep problems. *See* Doc. No. 91 Ex. D at 25. Finally, during Anderson's sleep test on November 16, 2006, she slept seven hours and her doctor stated that her results were normal. Doc. No. 106 Ex. C at 45.

When viewed as a whole, the medical opinions provided by Anderson's doctors and her own claims fail to establish that Anderson was substantially limited in any major life activity.

13

*See, e.g.*, *E.E.O.C. v. Sara Lee Corp*, 237 F.3d 349, 352 (4th Cir. 2001) (ADA plaintiff held not disabled because "[m]any individuals fail to receive a full night of sleep" and plaintiff did not show that the employee's "seizures substantially limited her major life activity of sleeping in a manner different from the average person."); *Boerst v. Gen. Mills Ops.*, 25 F. App'x 403, 407 (6th Cir. 2002) ("[g]etting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA.").

Anderson for the first time claims in her Opposition Brief that she suffered from Dysthymic Disorder which affected her ability to sleep. Doc. No. 100 at 26, 44. Anderson never before raised this issue during her deposition or in any pleading. Moreover, Anderson fails to explain how this condition has affected her major life activities. Thus, the Court declines to consider this new disability or disorder under the ADA.

Accordingly, the Court finds that Anderson has not established a *prima facie* case of disability discrimination.[7] Even if Anderson had established a *prima facie* case, Defendants have presented legitimate, non-discriminatory reasons for terminating Anderson: (1) Anderson's long-standing problems with communication and respect, as documented in every single formal review Anderson received at Discovery, including her year-end 2004 review, mid-year 2005 review, year-end 2005 review, and mid-year 2006 review, Doc. No. 91 Exs. A:18, A:20- A:22; (2) Anderson's communication problems with her supervisors, exemplified by the week in October 2006 in which Anderson left for a day-long ABA Conference in California and failed to

---

[7]Because the Court finds that Anderson is not a person with a disability under the ADA, the Court declines to consider whether: (2) "the [employer] had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir.2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999)).

return for a week without notice to her supervisors and only a daily e-mail to her assistant stating

that Anderson was "out of the office today sick with no access to blackberry, email or phone."

Doc. No. 91 Ex. A:10; and (3) Anderson's inability or refusal to correct ESS time discrepancies

or to provide an explanation for such inconsistencies by December 20, 2006, as requested by her

supervisor. Doc. No. 89 Ex. H at 39.

The Court does not find that Anderson presented any evidence to show that Defendants'

legitimate, non-discriminatory reasons were pretextual. Anderson has not shown that Defendants

did not reasonably believe that the ESS discrepancies were due to Anderson's manipulating her

time. Moreover, Anderson has not shown that her sleeping disorder was ever discussed during

meetings relating to Anderson's termination. For these reasons, the award of summary judgment

to Defendants is appropriate on Anderson's disability discrimination claims, Counts II and III.


C.      Violations of the FMLA

Anderson alleges violations of the FMLA on the grounds that Defendants denied

Anderson's request for reduced work schedule leave in December 2006 and terminated her after

she requested such leave. The FMLA provides that an eligible employee is entitled to 12 weeks

of leave per year for a 'serious health condition that makes the employee unable to perform the

functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D) (2006).  There are two

potential claims under the FMLA: an employee can claim either that her employer interfered

with her substantive rights under the FMLA, such as by "discouraging an employee from taking

leave," or that her employer retaliated against her for exercising FMLA rights.  *Walker v.*

*Gambrell*, 647 F. Supp. 2d 529, 538 (D. Md. 2009).  According to Anderson's Amended

Complaint, she is bringing her FMLA claim under both theories.

15

In order to state a claim for FMLA retaliation or interference, Anderson must first establish that she is entitled to FMLA leave. As stated by this Court,

> The core requirements for triggering an employer's obligations [under FMLA] are a *serious health condition* and *516 *adequate communication,* meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply. *See* 29 U.S.C. § 2612(a)(1)(D), (e); 29 C.F.R. §§ 825.302-.303. When timely and adequate communication is not given, the protections of the Act do not apply, even if the employee in fact has a serious health condition.

*Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 515-16 (D. Md. 2008). Thus, in addition to proving that the employer interfered with the employee's rights or retaliated against the employee for exercising her rights, the employee must also show that: (1) "she was an eligible employee"; (2) "her employer was covered by the statute"; (3) "she was entitled to leave under the FMLA"; and (4) "she gave [the] employer adequate notice of her intention to take leave." *Id.* at 516 (explaining that although an employee does not need to explicitly state that she seeks to take FMLA leave, mere notice that the employee is sick without details about the nature of the illness is insufficient to indicate to the employer that FMLA leave is necessary).

Here, Anderson has not demonstrated: (1) that she has a serious medical condition which would entitle her to FMLA leave; or (2) that she gave her employer adequate notice of her need for leave. In regard to her health condition, Anderson has a sleep disorder, but her doctor concluded that Anderson did not have "significant impairment in things like focus, concentration, alertness, mood, [or] memory" that would prevent her from working. Doc. No. 87 Ex. E at 14., The Court finds that Anderson failed to identify a serious health condition. Even if Anderson's insomnia did qualify as a serious health condition, Anderson failed to give her supervisors adequate notice of her need for leave. Although Anderson requested a reduced work schedule in November, asking that she work no more than 8 hours a day including her commute,

this would not be sufficient to alert Defendants that FMLA leave was needed. *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009) (although an employee needn't explicitly state that she seeks FMLA leave, the defendant must at least be aware of the employee's "need for leave for an FMLA-related reason" before the employee can sustain an FMLA retaliation claim). Anderson does not contend that Defendants were aware of the nature or extent of her disability.

Simply notifying Defendants that Anderson's doctor recommends that she reduce her work hours is insufficient to alert Defendants that FMLA leave is needed, especially without information concerning the nature of the illness. *See Rodriguez*, 545 F. Supp at 516. FMLA leave only entitles an employee to leave for serious health conditions, and unless the employee provides some notification that the request for a reduced work schedule is in connection with a qualifying condition, the employer is unable to ascertain whether FMLA is necessary. "The core requirements for triggering an employer's obligations [under the FMLA] are a *serious health condition* and *adequate communication*, meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply." *Rodriguez*, 545 F. Supp. at 515-16. *See also* 29 U.S.C. § 2612(a)(1)(D), (e); 29 C.F.R. §§ 825.302–.303.

Accordingly, the Court finds that Anderson has not provided sufficient evidence for a reasonable jury to conclude that Defendants violated the FMLA, and grants Defendants' motion for summary judgment on Anderson's FMLA retaliation and interference claims, Counts IV and V.

## IV.    CONCLUSION

For the foregoing reasons, Anderson's motion for discovery sanctions is denied and

Defendants' motion for summary judgment is granted. A separate order will follow.


<u>September 29, 2011</u>                     <u>           /s/              </u>
        Date                                 Alexander Williams, Jr.
                                        United States District Judge