**AMENDED OPINION**

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 11-2195

---

VICTORIA ANDERSON,

        Plaintiff - Appellant,

  v.

DISCOVERY COMMUNICATIONS, LLC; JANELL COLES; LISA WILLIAMS-FAUNTROY; DOE DEFENDANTS 1 THROUGH 4,

        Defendants - Appellees.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:08-cv-02424-AW)

---

Argued: January 30, 2013        Decided: April 5, 2013

Amended Opinion Filed: May 3, 2013

---

Before NIEMEYER, SHEDD, and AGEE, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Elaine Lynette Fitch, KALIJARVI, CHUZI, NEWMAN & FITCH, PC, Washington, D.C., for Appellant. Mark David Harris, PROSKAUER ROSE, LLP, New York, New York, for Appellees. **ON BRIEF:** George M. Chuzi, KALIJARVI, CHUZI, NEWMAN & FITCH, PC, Washington, D.C., for Appellant. Amanda D. Haverstick, Julianne M. Apostolopoulos, PROSKAUER ROSE, LLP, Newark, New Jersey, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Victoria Anderson appeals from the district court's judgment granting summary judgment to her former employer Discovery Communications, LLC, ("Discovery") and other individual defendants on her claims brought under the Americans with Disabilities Act ("ADA"), the Montgomery County, Maryland, Human Rights Act ("MCHRA"), and the Family Medical Leave Act ("FMLA"). For the reasons set forth below, we affirm the judgment of the district court.

I. Factual Background & Proceedings Below

From August 2004 to January 2007, Discovery employed Anderson as an attorney in the Programming, Production, and Talent Group ("the Group") of Discovery's Legal Department. Defendant-Appellee Janell Coles was the Director of the Group, and Anderson's direct supervisor; Defendant-Appellee Lisa Williams-Fauntroy was Vice President of the Group, and Coles' direct supervisor.[1] Although Anderson received praise for her strong technical, legal, and drafting skills, her annual performance reviews repeatedly indicated needing improvement in areas such as "effectively organizing, planning, and

---

[1] For ease of reference, all of the Defendants (Appellees here will be referred to collectively as "Discovery."

3

prioritizing work," working on her demeanor and tone, and in developing her interpersonal skills with both colleagues and clients. (J.A. 659-60.)

In October 2006,[2] Anderson was in California for a conference when she became ill and visited a local doctor, who advised her, inter alia, that she may have a sleep impairment. Upon her return to Maryland, Anderson requested and was granted FMLA leave from October 20 to November 15, during which time she consulted with her personal physician, Dr. Collin D. Cullen, and a sleep specialist, Dr. Andrew P. Tucker. The physicians determined that Anderson's laboratory and sleep test results were normal, and excluded sleep apnea as a diagnosis. Since Anderson reported that she was only sleeping between two and four hours each night, the physicians concluded she likely suffered from "fatigue," "sleep deprivation," and "insomnia." (J.A. 306-09.) The physicians gave Anderson advice on falling and staying asleep and a prescription for Ambien.

In late November, Anderson returned to Dr. Cullen, and based on Anderson's statements indicating that her overall condition was improving, Dr. Cullen recommended that she "[r]eturn to full duty with hour restriction to 8 hours per day." (J.A. 306, 308.) In two follow-up appointments with Dr.

---

[2] All dates are in 2006, unless otherwise noted.

4

Tucker at the end of November and mid-December, Dr. Tucker indicated that he placed "no restrictions" on Anderson's ability to work, and that he had no reason to believe that she was "significantly impaired" by that point. (J.A. 327.) At his deposition, Dr. Tucker testified that as of December 19, there was no basis for placing Anderson on disability "from a sleep standpoint." (J.A. 325-26.)

When she returned to work, Anderson asked her supervisors to be allowed a maximum 8-hour work day. At their request, Anderson submitted a proposal, but only committed to work in the office between 11 a.m. and 4 p.m. Moreover, she stated that she would not track her personal, break, or lunch time or account for her specific workload unless other members of the Group were also required to do so. Anderson's supervisors reviewed the proposal and denied her request, stating that the proposal would not enable her to perform the responsibilities of her job, which included a 40-hour minimum work week, presence in the office during core business hours of 9 a.m. to 6 p.m. Monday through Friday, and flexibility to work outside those hours as international transactions required.

On January 3, 2007, Williams-Fauntroy informed Anderson that Discovery was terminating her employment. At her deposition, Anderson stated that Williams-Fauntroy told her that her "performance was not at all a factor in her termination,"

and that the "sole reason" for her termination was her failure to update her time records. (J.A. 157-58.) Williams-Fauntroy stated in her deposition that she informed Anderson that "she was being terminated because [Discovery] determined that she is untrustworthy and that she had not accurately represented her time entries [documenting her work hours] as requested by her manager." (J.A. 217.) Williams-Fauntroy also recounted several factors underlying that decision, including Anderson's long-term "insubordination"; her refusal to accept a performance plan schedule following her mid-year (2006) review; her "[c]ombative, difficult, manipulating" nature, which had led to "difficulties" with clients and colleagues, as well as "skewing" and misrepresenting prior discussions with co-workers and supervisors; and her "manipulating" time sheets documenting vacation and sick leave, coupled with her subsequent refusal to correct them when confronted with evidence establishing that she had inaccurately recorded her time. (J.A. 220, 223-24.)

Anderson filed a complaint in the United States District Court for the District of Maryland, alleging claims of failure to accommodate and retaliation under the ADA and MCHRA,[3] and

---

[3] Because Maryland has applied the MCHRA by looking to ADA case law, it is appropriate to consider those claims together, as the district court did. See Ridgely v. Montgomery Cnty., 883 A.2d 182, 193 (Md. Ct. App. 2005) (stating that the MCHRA and ADA contain "almost identical" definitions of "disability" and
(Continued)

retaliation and interference of rights under the FMLA. Following discovery, Discovery moved for summary judgment, which the district court granted. The district court held that Anderson was not an "individual with a disability" under the ADA and therefore could not establish a prima facie case of failure to accommodate; that even if she could establish a prima facie case of retaliation, Anderson had not presented any evidence indicating Discovery's legitimate, non-discriminatory reasons for firing her were a pretext; that Anderson did not have a "serious medical condition" entitling her to FMLA leave; and that Anderson had not given Discovery adequate notice of her need for FMLA leave. Anderson v. Discovery Commc'ns, LLC, 814 F. Supp. 2d 562, 569-72 (D. Md. 2011).

Anderson noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

II. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard used by the district court. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

---

"qualified individual with a disability"). Similarly, our analysis of the ADA claims encompasses our analysis of Anderson's MCHRA claims.

7

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Id. The facts must be viewed in the light most favorable to the non-moving party, id., which we do here.

### III.  ADA Claims

The ADA prohibits discrimination in employment decisions against "individual[s] on the basis of disability." 42 U.S.C. § 12112(a). A threshold issue is whether a plaintiff has adduced evidence showing that she is such a person, i.e., that she is an individual with a disability as defined by the statute. See Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 (4th Cir. 2004) (stating that a plaintiff is first required "to produce evidence that she is . . . disabled."). In relevant part, the ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."[4] 42 U.S.C. § 12102(a)(A). Thus, having a "physical or mental impairment" is not sufficient on its own to establish an ADA-cognizable disability, nor is showing that the

---

[4] The ADA lists three definitions of "disability," but Anderson relies only on this one. See 42 U.S.C. § 12102(2) (2007).

8

impairment affects "one or more major life activities."[5] An individual must also show she is "substantially limit[ed]" as a result of the impairment. See Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999).

Anderson contends that the record evidence shows a genuine issue of material fact exists as to whether she was "substantially impaired" in her major life activity of sleeping. This is so, she submits, because the record reflects her diagnosis of insomnia as a result of averaging less than four hours of sleep at night, which is less than the average person. In addition, Anderson contends that the district court improperly considered the effect her lack of sleep had on her daytime productivity and work, thus holding her to a heightened standard of showing impairment in more than one major life activity. She further asserts that the district court failed to view the evidence in the light most favorable to her.[6]

---

[5] Although the applicable version of the ADA does not expressly delineate "sleeping" as a "major life activity," every court to address the issue, including this one, has concluded or assumed that it is. See EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001); see also EEOC v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 616 (5th Cir. 2009) (collecting cases).

[6] Anderson also maintains that the district court erred in refusing to consider her diagnosis of dysthymic disorder because she "was not seeking to have this considered as a separate disability, but rather, submitted that her impairment of dysthymic disorder impacted the major life activity of sleeping." (Opening Br. 40.) The district court appropriately (Continued)

9

We have reviewed the record and conclude the district court did not err in granting summary judgment on this claim. Cf. Anderson, 814 F. Supp. 2d at 569-72. Viewing the evidence in the light most favorable to Anderson, the evidence simply does not support the conclusion that she was "substantially impaired" at the time Discovery terminated her employment. Moreover, considering the district court's statements in context, the court did not hold Anderson to an improper standard. Nor did it misapply the standard for granting summary judgment.

Under the Supreme Court precedent applicable to Anderson's case,[7] the term "substantially" as used in the ADA, is "to be

---

declined to consider this diagnosis as part of Anderson's claim given that she relied on it for the first time in opposing summary judgment. See Conley v. Gibson, 355 U.S. 41, 47 (1957) (stating that a complaint must give "fair notice of what the plaintiff's claim is and the grounds upon which it rests") (emphasis added). Moreover, the analysis as to whether Anderson was "substantially limited" as a result of impairment to her ability to sleep would be the same regardless of the underlying impairment creating her problems sleeping. See 29 C.F.R. § 1630.2(j).

On appeal, Anderson raises for the first time her diagnosis of anxiety as a basis for an ADA claim. Given her failure to raise it to the district court, we need not address this claim either. Williams v. Prof'l Transp. Inc., 294 F.3d 607, 614 (4th Cir. 2002) ("[In this circuit,] issues raised for the first time on appeal are generally not considered absent exceptional circumstances.").

[7] In 2008, Congress amended the ADA considerably, broadening the Supreme Court's narrow reading of the statute. These amendments do not apply to Anderson's case, however, because she was terminated prior to their enactment. See Reynolds v. Am.
(Continued)

interpreted strictly to create a demanding standard for qualifying as disabled." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002). "[A]n individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." Id. at 198. As the Supreme Court explained:

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.

Id. (internal quotation marks omitted); see also Sutton, 527 U.S. at 482 ("A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken.").

Applying these principles to Anderson's case, the record fails to show a genuine issue of material fact as to whether Anderson suffered from a disability cognizable under the ADA.

---

Nat'l Red Cross, 701 F.3d 143, 151-52 (4th Cir. 2012) (joining other circuits court of appeals in holding that the 2008 ADA amendments do not apply retroactively).

11

Anderson's own doctors recounted that during their appointments with her in late November and mid-December, Anderson stated that her condition had "improved since time off" and that despite getting "much less sleep than what she had historically," she "awakes feeling fully refreshed," was "functioning normally," and was not "feeling any functional impairment as a result" of getting less sleep. (J.A. 516, 315-17, 325, 329-30, 333.) In addition, Anderson's sleep test results were "normal" and she slept "more than seven hours." (J.A. 325.) Dr. Tucker specifically indicated that as of Anderson's appointment with him on December 19, there was no basis "from a sleep standpoint" to place Anderson on disability because her functioning was not significantly impaired as of late November. (J.A. 325-26.)

While Anderson is entitled to have the evidence viewed in the light most favorable to her,

> only reasonable inferences from the evidence need be considered by the court . . . . Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it merely rests upon speculation and conjecture.

Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995). As we previously recognized, "[m]any individuals fail to receive a full night of sleep." EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001) (quoting Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir. 1958)). Sleep patterns

12

vary between individuals and even during a person's lifetime, and on this record, Anderson simply failed to present evidence creating a genuine issue of material fact as to whether she was "substantially impaired" in December 2006 as a result of her insomnia. Cf. EEOC v. Chevron Phillips Chem. Co., 570 F.3d 606, 618 (5th Cir. 2009) ("In an ADA case, the relevant time for assessing the existence of a [cognizable] disability is the time of the adverse employment action."). Accordingly, the district court did not err in concluding that Anderson was not an "individual with a disability" under the ADA.

Anderson's ADA retaliation claim is based on the ADA's prohibition of discrimination "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge" thereunder. 42 U.S.C. § 12203. To survive summary judgment on her ADA retaliation claim, Anderson had to produce evidence demonstrating that (1) she engaged in conduct protected by the ADA; (2) she suffered an adverse employment action subsequent to engaging in the protected conduct; and (3) a causal link exists between the protected activity and the adverse action. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002).

Anderson sought to prove causation using the burden-shifting framework established for Title VII cases in McDonnell

13

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Anderson thus bore the initial burden of establishing a prima facie case of discrimination; if successful, the burden then shifted to Discovery to provide a legitimate, nondiscriminatory reason for its action; thereafter, the burden returned to Anderson to show by a preponderance of evidence that the proffered reason was a pretext for discrimination or retaliation. Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006) (en banc).

Anderson contends the district court erred in holding that she had failed to set forth evidence from which a jury could conclude that Discovery's nondiscriminatory explanation for its action was a pretext. She asserts Discovery had "shifting justifications" for terminating her and that is sufficient reason to deny summary judgment. Specifically, she asserts that at the time of her termination, Williams-Fauntroy confirmed that the "sole" reason for the decision was her failure to amend her time entries, but that since litigation commenced, Discovery manufactured a host of additional reasons to support its decision. As such, she posits that Discovery's questionable credibility supports an inference of pretext.

We agree with the district court that even assuming Anderson has set forth a prima facie case of retaliation, Discovery has provided a legitimate, nondiscriminatory reason for terminating her employment, and no genuine issue of material

14

fact calls that reason into question as pretext. Anderson repeatedly misrepresents the record evidence and parrots statements of law regarding pretext, but the record evidence simply does not support her contention. From the time of Anderson's actual discharge through litigation Discovery provided specific examples of that behavior, and different individuals characterized her conduct using slightly different examples or terminology, but Discovery's explanation for its decision has been consistent: Anderson's untrustworthiness and poor communication skills.

Far from being the "sole" reason for her termination, the accuracy of Anderson's time sheets was the proverbial straw that broke the camel's back, i.e., the last in a line and immediate precipitating factor in a long, documented history of Anderson's inability to communicate accurately and truthfully with her co-workers. This record diverges from cases where we have held that an employer's changing explanations for its employment decision gave rise to an inference of pretext. See, e.g., Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 646 (4th Cir. 2002) (discussing how a shift both in the detail and the explanation for the employer's decision gave them "the flavor of post-hoc rationalizations"); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001) (stating that an employer's inconsistent explanations and different

15

justifications were probative of pretext). Anderson "cannot seek to expose [Discovery's] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity[.]" Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006). In the absence of such evidence of pretext, "[i]t is not our province to decide whether [Discovery's] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for [Anderson's] termination." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quotation marks omitted).

Discovery articulated a legitimate, non-discriminatory reason for Anderson's termination of employment, and the record is devoid of evidence that would create a genuine issue of material fact as to whether that explanation was mere pretext. Consequently, the district court did not err in granting Discovery summary judgment on Anderson's ADA retaliation claim.

## IV. FMLA Claims

Anderson also challenges the district court's grant of summary judgment to Discovery on her FMLA retaliation and interference claims. Anderson alleged that Discovery violated the FMLA by unlawfully interfering with her right to take a reduced work schedule upon her return to work in November, and that her subsequent termination constituted retaliation under

16

the FMLA. Having reviewed the record, as well as the parties' arguments on appeal, we conclude that the district court did not err in granting summary judgment to Discovery.[8]

The FMLA allows certain employees to take a total of "12 work weeks of leave" during a twelve-month period for a "serious health condition" that makes the employee "unable to perform the functions of" her job. 29 U.S.C. § 2612(a)(1)(D). "FMLA claims arising under [a] retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of McDonnell Douglas[.]" Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 550-51 (4th Cir. 2006). Anderson's FMLA retaliation claim thus fails for the same reason her ADA retaliation claim failed: the absence of evidence indicating that Discovery's legitimate, nondiscriminatory reason for terminating Anderson was pretext for unlawful behavior. See infra pp. 12-15.

In order to establish a claim for violation of the FMLA, including interference of rights thereunder, Anderson had to

---

[8] The district court concluded Anderson's FMLA claims failed because she did not have a "serious health condition" and had not provided adequate notice to Discovery of her need for FMLA leave. We affirm on different grounds than relied on by the district court. See Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir. 1993) ("In reviewing the grant of summary judgment, we can affirm on any legal ground supported by the record and are not limited to the grounds relied on by the district court.").

prove not only the fact of interference, but also that the violation prejudiced her in some way. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002); see 29 U.S.C. § 2617(a)(1). Such prejudice can be proven by showing that the employee lost compensation or benefits "by reason of the violation," id. § 2617(a)(1)(A)(i)(I); sustains other monetary losses "as a direct result of the violation," id. § 2617(a)(1)(A)(i)(II); or suffers some loss in employment status remediable through "appropriate" equitable relief, such as employment, reinstatement, or promotion, id. § 2617(a)(1)(B).

Here, the only injury Anderson alleged as a result of Discovery's alleged unlawful denial of her request for a reduced work schedule was that she was not permitted to work a reduced schedule. She does not claim that she lost any compensation or benefits, sustained other monetary loss, or suffered loss in employment status as a result of the purported interference. While Anderson sought $786,000 back pay and reinstatement, she has failed to show that she is entitled to any of these amounts. As discussed above, Anderson's termination of employment was a separate and unrelated event, and from the record it appears that Anderson remained employed and was given full benefits until her termination. As such, her interference claim must also fail. See Yashenko, 446 F.3d at 549-50 (holding that where employee was terminated due to a legitimate reason, he cannot

18

show that he is entitled to reinstatement even if the employer otherwise interfered with his FMLA rights by denying leave).

V.

For the aforementioned reasons, we affirm the district court's judgment awarding summary judgment in favor of Discovery.

<u>AFFIRMED</u>